UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RYAN RODRIGUEZ**                                                              CIVIL ACTION

**VERSUS**                                                                             NO. 23-5656

**OCCIDENTAL FIRE & CASUALTY**                                     SECTION "B"(4)
**COMPANY OF NORTH CAROLINA**

### ORDER AND REASONS

Before the Court are plaintiff Ryan Rodriguez's motion to remand (Rec. Doc. 6) and defendant Occidental Fire & Casualty Company of North Carolina's opposition (Rec. Doc. 11). For the following reasons,

**IT IS ORDERED** that the motion is **DENIED**.

### I. Factual Background and Procedural History

Plaintiff Ryan Rodriguez is a resident of Jefferson Parish, Louisiana. Rec. Doc. 1-1 at 3. On August 29, 2021, Hurricane Ida made landfall as a Category 4 storm, causing damage to "the exterior, specifically but not limited to the roof and shed" of plaintiff's property. *Id.* at 5. The property was insured by a policy of defendant Occidental Fire & Casualty Company of North Carolina ("Occidental"), against which plaintiff made a timely claim. *Id.* at 4–5. After Occidental provided a replacement cost value of $36,604.33 and an actual cost value of $26,816.56 for the damage and tendered the actual-cost payment, plaintiff brought suit in state court, contending the "initial estimate grossly undervalued the property damage." *Id.* at 5.

Plaintiff provides two causes of action: breach of insurance contract and breach of duty of good faith and fair dealing. *See id.* at 6–7. With the latter claim, plaintiff provides that an insurer is subject to awards of reasonable attorney's fees and penalties of up to two times the damage

1

sustained. *Id.* at 7 (citing La. R.S. §§ 1892(B)(1), 1973(C)). Plaintiff also lists various damage types recoverable:

> a. Repair and remediation expenses; b. Severe inconvenience, mental anguish and stress; c. Inability to make appropriate repairs due to inadequate insurance payments; d. Loss of contents; e. Any and all other applicable damages arising under any of the policy's sub-coverage limits, including but not limited to increased cost of construction; f. Actual damages related to the increased cost of repairs; g. Consequential damages; h. Attorney's fees and penalties; and i. Costs of this litigation and any pre-litigation costs related to the insurer's failure to make adequate insurance payments; j. Any and all other damages that are shown through discovery and/or proven at trial of this matter.

*Id.* at 8. No matter the possible damages, plaintiff submits in his state court petition that "his individual damages exceed the specific amount of damages that are necessary to establish the right to a jury trial, but are within the jurisdictional limits of this court." *Id.* at 4.

On September 29, 2023, defendant timely removed the case. *See* Rec. Doc. 1. Being incorporated in and having its principal place of business in North Carolina, defendant claimed diversity jurisdiction of 28 U.S.C. § 1332 as its removal basis. *Id.* at 2. With complete party diversity in a suit filed by a Louisiana citizen, defendant also contended the threshold amount in controversy to be met. *Id.* at 3. To justify an amount in excess of $75,000.00, Insurer reproduced the damages that plaintiff claims and additionally notes plaintiff's policy coverage: "dwelling damage coverage in the amount of $336,000.00, other structures coverage in the amount of $33,600, personal property coverage in the amount of $168,000, and loss of use coverage in the amount of $100,800.00." *Id.* 3–4. Contesting the requisite amount in controversy, plaintiff timely filed this motion to remand.

II.  **Parties' Contentions**

   a.  **Plaintiff's Contentions**

In his motion to remand, plaintiff challenges defendant's satisfaction of its "burden of establishing federal diversity jurisdiction at the time of removal." Rec. Doc. 6. Specifically, Mr. Rodriguez argues that an amount in controversy exceeding $75,000.00 is not facially apparent from his petition nor proven by Occidental through documentation. *See* Rec. Doc. 6-1 at 1. In his state court pleading, plaintiff states that the exterior of his home was damaged in Hurricane Ida, "specifically but not limited to the roof and shed." *See id.* at 4. Although he contends that Occidental "undervalued the damages," plaintiff notes the quoted replacement cost value of $36,604.33 and actual cash value of $26,816.56 as evidence of an amount below the diversity threshold. *Id.* 4–5. Such is the case even when other damage awards—including attorney's fees—are factored in, which Mr. Rodriguez mentions without comment. *See id.* As additional proof, plaintiff points to a statement in his petition that "his individual damages exceed the specific amount of damages necessary to establish the right to a jury trial but are within the jurisdictional limits of this court." *Id.* at 4.

With the jurisdictional amount not facially apparent, plaintiff also contends that defendant has not introduced any summary judgment type evidence to establish the sufficient amount in controversy. *See id.* at 5. Mr. Rodriguez argues that Occidental's attachment of the Policy Declarations Page of the insurance policy is unhelpful to the amount-in-controversy question. *See id.* As the only exhibit attached to the notice of removal, the declarations provide evidence of the amount of coverage, but not the amount in dispute. *See id.* at 5–6. To plaintiff, Occidental's use of the policy attachment is merely "conclusory" and fails to show by preponderance of the evidence an amount exceeding $75,000.00. *Id.* at 6.

Finally, in the face of amount-in-controversy ambiguity, plaintiff insists the court should favor remand. *See id.* at 2–3 (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720,

3

723 (5th Cir. 2002)). Occidental failed to clarify such ambiguity, Mr. Rodriguez avers. *See id.* at 3. Therefore, the burden does not shift to plaintiff to prove an amount less than $75,000.00. *See id.* at 4. In sum, defendant's failure "to meet the stringent burden placed on it by the statutes and jurisprudence" convinces plaintiff that remand is proper.

### b. Defendant's Contentions

In contrast to plaintiff's "stringent" interpretation, defendant categorizes its burden as needing "only [to] prove that it is more likely than not that the amount in controversy exceeds $75,000, exclusive of interest and costs." Rec. Doc. 11 at 1. And according to Occidental, the more-likely-than-not standard is met for multiple reasons: "the value of the Policy far exceeds $75,000, [] the plaintiff refuses to stipulate that the damages will be less than $75,000, and the significant number of unspecified damages listed within the Insured's Petition." *Id.* at 2.

As to the value of the policy, defendant lists coverage categories that exceed $600,000 in total value. *See id.* at 1. Occidental insists that the maximum amount of coverage is implicated because Mr. Rodriguez "reserves his right to supplement or amend" his claim. *Id.* Further, because its payment of $26,816.56 is already considered by plaintiff to be "an underpayment," a higher amount is in contest. *Id.* at 4.

Moreover, Occidental insists the real value of the claim is calculated not merely by the purportedly undervalued property damage but also by the various "unspecified, alleged damages." *Id.* at 4–5 (listing plaintiff's ten types of petitioned damages). When evaluating this list, defendant submits that a court need not evaluate the likelihood of recovery but only the value of the object of litigation. *See id.* at 5 (citing *Durbois v. Deutsche Bank Nat'l Tr. Co.*, 37 F.4th 1053, 1057 (5th Cir. 2022)). Plaintiff's "significant number of unspecified damages" expands the value, defendant insists, beyond the jurisdictional threshold. *Id.* at 6.

As another indication of the necessary amount, Occidental notes that **Mr. Rodriguez has not stipulated to a lower amount "despite repeated requests to do so." *Id.* at 6.** (Emphasis added). Defendant includes two emails from defense counsel, inquiring of plaintiff's willingness to stipulate to a damage amount below $75,000.00. *See* Rec. Doc. 11-1. Apparently, the emails received no response from plaintiff counsel. *See id.* Although stressing the absence of a stipulation, Occidental also acknowledges that even if a stipulation were made the case could remain in federal court. *See* Rec. Doc. 11 at 6 (citing *Weeden v. PSC Indus. Outsourcing, LP*, No. 19-18, 2019 WL 4023755, at *5 (M.D. La. Aug. 7, 2019)). Such a stipulation would "not [be] conclusive" as to the jurisdictional amount. *Id*.

Finally, defendant contends that circuit case law supports removal in close cases. *See id.* at 4 (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. Reeves*, No. 94-2580, 1994 WL 660561, at *1 (E.D. La. Nov. 23, 1994) ("Under Fifth Circuit precedent, the jurisdictional standard clearly favors those parties seeking to invoke federal jurisdiction.")). When the removal threshold is met by a defendant, Occidental argues that a plaintiff "can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000.00." *Id.* (quoting *Robinson v. Acad. Louisiana Co.* No. 09-771, 2009 WL 10678984, at *2 (M.D. La. Oct. 16, 2009)). Believing the removal threshold met, defendant notes no evidence of plaintiff's contradiction to a legal certainty. *See id.* at 6.

**III.    Law and Analysis**

    **a.  Standard of Review**

Federal courts are courts of limited jurisdiction. *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010). Removal of a civil action to federal court is governed by 28 U.S.C. § 1441 and is proper where the federal court has original jurisdiction. *See* 28 U.S.C. §

1441(a). "Original jurisdiction, in non-maritime claims, lies where the conditions of 28 U.S.C. §§ 1331 [federal question] or 1332 [diversity] are satisfied." *Halmekangas*, 603 F.3d at 292 (alteration in original) (internal quotations and citation omitted). Federal diversity jurisdiction under 28 U.S.C. § 1332 exists where there is complete diversity of citizenship of the parties, and where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). Motions to Remand are governed by 28 U.S.C. § 1447(c), which provides that: "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

"To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal." *Id.* (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). However, Louisiana law prohibits plaintiffs from pleading a specific amount of monetary damages. *See* La. Code Civ. Proc. art. 893(A)(1). Where statements in a petition allude to damages less than $75,000, they are not dispositive as to the amount in controversy. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995). Instead, courts understand pleadings in compliance with Article 893 as stating an indeterminate amount of damages. *See, e.g., Maze v. Protective Ins. Co.*, No. 16-15424, 2017 WL 164420, at *2 (E.D. La. Jan. 17, 2017).

Where an indeterminate amount of damages is alleged, the removing party "must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000." *See Manguno*, 276 F.3d at 723 (citation omitted). This can be established if it is facially apparent that

the amount of damages is likely to exceed the jurisdictional amount of $75,000, or by "summary judgment type evidence" of the facts in controversy that support a finding of exceeding the jurisdictional amount. *See id.* (citations omitted). In determining the amount, a court does not prejudge the plaintiff's likely recovery but merely makes "an estimate of the amount that will be put at issue in the course of the litigation." *Durbois v. Deutsche Bank Nat'l Tr. Co. as Tr. of Holders of AAMES Mortg. Inv. Tr. 20054 Mortg. Backed Notes*, 37 F.4th 1053, 1057 (5th Cir. 2022) (citation omitted).

### b. Motion to Remand

Here, Occidental contends the removal threshold is met due to the insurance policy's potential coverage and Mr. Rodriguez's connected damage claims. *See* Rec. 11 at 6. The petition alleges damage to "the exterior, specifically <u>but not limited to</u> the roof and shed" of his property. *Id.* at 5 (emphasis added). We observe that alleged facts—and not insured limits—determine the amount in controversy. *See Tanet v. USAA Ins. Co.*, No. 09-6779, 2011 WL 39036, at *2 (E.D. La. Jan. 5, 2011).

In Louisiana, a breach of contract is found when (1) an obligor has a performance due, (2) the obligor fails to perform the obligation, and (2) the failure to perform causes damages to the obligee. *See IberiaBank v. Broussard,* 907 F.3d 826, 835 (5th Cir. 2018) (quotation omitted). Louisiana Civil Code Article 1995 provides the classical definition of damages: "Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived." Here, Occidental timely provided $26,816.56 in payment of its insurance obligation. *See* Rec. Doc. 11-2 at 1. Mr. Rodriguez asserts this payment "grossly undervalued the property damage." *Id.* at 5. Nonetheless, as parties have given no indication of profits thereby deprived, breach-of-contract damages are measured in the amount beyond the tendered payment.

7

In connection to the breach of contract damages, plaintiff also cites two statutory options for recovery under the theory of defendant's breach of good faith and fair dealing, Louisiana Revised Statutes Sections 22:1892 and 22:1973. *See* Rec. Doc. 1-1 at 7. Each has penalty provisions, but Mr. Rodriguez can recover only from whichever provides the greater amount. *See Rebecca Truck Plaza & Casino, L.L.C. v. Landmark American Insurance Co.*, No. 23-3709, 2023 WL 6842241, at *3 (E.D. La. Oct. 17, 2023) (citing *Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 174 (La. 2000); *Zydeco's II, L.L.C. v. Certain Underwriters at Lloyd's, London*, 356 So. 3d 345, 387–88 (La. App. 5 Cir. 2021)). Further, the statutory penalty amount is properly included in the amount-in-controversy calculation. *See St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1254–55 (5th Cir. 1998).

Section 22:1973 obligates the insurer to "adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." La. R.S. § 22:1973(A). Such a duty is breached, *inter alia*, where an insurer fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." *Id.* § 22:1973(B)(5). Suffering such a breach, "a claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." *Id.* § 22:1973(C). The Louisiana Supreme Court has interpreted the language "damages sustained" to correspond with Section 22:1973's introductory language: "*damages sustained as a result of the breach*." *Durio v. Horace Mann Ins. Co.*, 2011-0084 (La. 10/25/11), 74 So. 3d 1159, 1170 (emphasis in original). Such a breach does not occur where an insurer simply disputes a claim in good faith. *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290,

299 (5th Cir. 2009). It is reasonable to find that property damages that will be put at issue as a result of the alleged underpayment will approach the diversity jurisdiction amount.

Section 22:1892 provides a separate additional means of recovery for the insured. Under that statute, the insurer is liable for a coverage denial that is "arbitrary, capricious, or without probable cause" and results in a non-payment or underpayment "thirty days after receipt of satisfactory proofs of loss of that claim." La. R.S. § 22:1892(B). When the loss occurs due to a "presidentially or gubernatorially declared disaster," penalties consist of "fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs or two thousand five hundred dollars, whichever is greater." *Id.* § 22:1892(B)(1)(b). Here, the alleged property damage in Jefferson Parish, Louisiana resulted from Hurricane Ida, which was declared a disaster by President Biden on August 26, 2021. *See* Declaration HQ-21-181 (Aug. 30, 2021). As defendant tendered its payment within the mandated thirty-day period, the Court can look only to the possible difference between the amount paid and the amount due. It is reasonable to expect the difference will increase the amount-in-controversy calculation under Section 22:1973.

Moreover, Section 22:1892 additionally permits the recovery of "reasonable attorney fees and costs." Although such language is absent in Section 22:1973, the Louisiana Supreme Court has held that because "the conduct prohibited is virtually identical" reasonable attorney's fees can be awarded with Section 22:1973 penalties upon a finding of arbitrary and capricious conduct by the insurer. *Calogero*, 753 So. 2d at 174. These fees are included in the jurisdictional amount. *See Manguno*, 276 F.3d at 723–24; *St. Paul Reinsurance Corp.*, 134 F.3d at 1253–54. Attorney's fees are includible in determining the amount in controversy for diversity jurisdiction purposes, including those associated with state and federal court proceedings throughout this litigation.

Plaintiff has listed a significant number of unspecified damages within his petition. Although most of the prayed-for damages directly relate to the alleged contractual breach—which have been discussed above—Mr. Rodriguez includes in his list "[s]evere inconvenience, mental anguish and stress." Rec. Doc. 1-1 at 8. Again, this become includible for reaching plaintiff's potential damages.

General damages of the type asserted are available in breach-of-good-faith insurance cases. *See, e.g., Dickerson*, 556 F.3d at 304 (5th Cir. 2009) ("By authorizing 'any damages,' including 'any general or special damages,' the legislature pointedly permitted the award of mental anguish damages."); *Orellana v. Louisiana Citizens Prop. Ins. Corp.*, 2007-1095 (La. App. 4 Cir. 12/5/07), 972 So. 2d 1252, 1255, *writ denied*, 2008-0041 (La. 10/24/08), 25 So. 3d 777. Further, where mental anguish is found, the award can be significant. *See Dickerson*, 556 F.3d at 304 (affirming $25,000 award); *Orellana*, 972 So. 2d at 1255 (affirming $125,000 award). In sum, defendant has shown that plaintiff's contractual and other demands for relief present an amount in controversy to minimally satisfy the jurisdictional threshold.

It is also noteworthy, as pointed out infra, that an insured's sworn stipulation to damages totaling less than the diversity amount along with declining to seek or accept an above the latter limit is admissible proof of the amount-in-controversy - but not necessarily fully determinative.

New Orleans, Louisiana this 31st day of October, 2023

_____

SENIOR UNITED STATES DISTRICT JUDGE